**COAST FEDERAL SAVINGS BANK, Plaintiff,**

**v.**

**DIRECTOR, OFFICE OF THRIFT SUPERVISION and Federal Deposit Insurance Corporation, Defendants.**

**Civ. A. No. 91–0349.**

United States District Court, District of Columbia.

Dec. 4, 1991.

---

Charles J. Cooper, Michael A. Carvin, Robert J. Cynkar, Jane M. Sullivan, Susan M. Somach, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for Coast Federal Sav. Bank.

Stuart M. Gerson, John R. Tyler, John Schumann, Washington, D.C., for Department of Justice, Civil Div.

Harris Weinstein, Thomas J. Segal, Aaron B. Kahn, David H. Enzel, Washington, D.C., for Office of Thrift Supervision, Office of the Chief Counsel.

Thomas A. Schulz, Robert G. Clark, Susan Kantor Bank, Washington, D.C., for Federal Deposit Ins. Corp., Legal Div.

## ORDER

REVERCOMB, District Judge.

This is the third action before this District Court since late–1989 in which thrift institutions have sought equitable and declaratory relief from federal thrift regulators' efforts to apply stricter accounting treatment in calculating the plaintiff thrifts' minimum capitalization requirements.[1] Plaintiffs in all three suits have charged *inter alia* that the defendants abrogated contractual obligations made by their predecessor bodies, the Federal Home Loan Bank Board (FHLBB) and Federal Savings & Loan Insurance Corporation (FSLIC), to afford the plaintiffs a more lenient accounting treatment in consideration of plaintiffs' agreement to take over failing and/or failed thrift institutions, the massive liabilities of which were imperiling the thrift insurance fund. The stricter accounting treatment, which the defendants maintain was mandated by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), had the effect of placing the plaintiffs in each case out of compliance with capitalization rules.[2] In addition to contract breach, the plaintiffs have made takings, due process, and promissory estoppel claims.

In each of the three cases, the defendants have moved for dismissal on grounds that the District Court lacks subject matter jurisdiction[3] over what are, at root, claims of contract breach involving amounts exceeding $10,000 and of an uncompensated taking: the Tucker Act, 28 U.S.C. § 1491, and the "Little" Tucker Act, § 1346(a)(2), vest exclusive jurisdiction over such claims in the United States Claims Court. This Court has considered the matter at hand and finds no significant distinction between it and the two predecessor cases, both of which were dismissed on subject matter jurisdiction grounds. Accordingly, this Court also dismisses based on the sound reasoning of the earlier cases and on the additional reasons stated below.

## FACTS

In reviewing a motion to dismiss, plaintiff's factual allegations are presumed to be true, and inferences are to be drawn in favor of the plaintiff. *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1506 (D.C.Cir.1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The thrift industry crisis that underlies this dispute has been described elsewhere

---

1. The other two actions are *Olympic Federal Savings & Loan Association v. Director, Office of Thrift Supervision, et al.,* Civil Action No. 90–0482, 1990 WL 134841, and *Northeast Savings, F.A. v. Director, Office of Thrift Supervision, et al.,* 770 F.Supp. 19 (D.D.C.1991).

2. Complaint, para. 69–74; *see also Olympic, supra,* slip op. at 5 (D.D.C. Sept. 6, 1990), and *Northeast, supra,* at 20, 22 (D.D.C.1991).

3. In this case, the defendants have also moved for dismissal for failure to state a cause of action upon which relief can be granted, and plaintiff has moved for summary judgment. Because this Court dismisses this case for lack of subject matter jurisdiction, these motions are moot.

and need not be repeated here.[4] One victim of that crisis, Central Savings and Loan Association of California, was acquired by plaintiff Coast Federal Savings Bank on April 10, 1987, as part of a supervisory merger arranged in conjunction with the FSLIC and the FHLBB. Complaint para. 28–29. As part of an "Assistance Agreement" with Coast, FSLIC contributed $298.3 Million to Coast which was to be counted as a permanent credit to Coast's capital base for all regulatory purposes. Para. 42, 45. Coast alleges that the FHLBB endorsed this accounting treatment and, at the closing of the acquisition, issued to Coast a "forebearance letter" in which it agreed to this treatment and to refrain for five years from enforcing regulatory capital deficiencies arising from specified items, including Central's liabilities and net worth deficiency. Para. 47–48. This provision of the agreement was an essential inducement to Coast in acquiring Central. Para. 54.

Four months after the acquisition, on August 9, 1989, FIRREA became law. Para. 57. Three months later, on November 8, 1989, defendant Office of Thrift Supervision (OTS), which was created by FIRREA to replace the FHLBB, published minimum capital regulations pursuant to the new law that became effective by year's end. Para. 62. Coast contends that, while FIRREA does not so require, OTS's new regulations excluded or severely restricted regulatory capital credits such as those promised to Coast from inclusion in capital for purposes of meeting the stricter capital standards. Para. 65. Coast alleges that OTS's regulations left it struggling to maintain adequate capitalization and caused it to fall out of compliance with capital standards as of December 31, 1990. Para. 69–70. "As a result, Coast brought this action to vindicate its contractual and constitutional rights and to enjoin any regulatory actions with respect to Coast that are inconsistent with defendants' contractual obligations to Coast. [Para.] 79–85." Opposition at 6.

Coast contends that this Court has subject matter jurisdiction over this action under FIRREA pursuant to 12 U.S.C. § 1464(d)(1)(A), which provides that "the Director [of OTS] shall be *subject to suit* (other than suits on claims for money damages) ... in the United States District Court for the District of Columbia," and pursuant to 12 U.S.C. § 1819, which grants defendant Federal Deposit Insurance Corporation (FDIC), the successor to the FSLIC, the power "*to sue and be sued,* and complain and defend, in any court of law or equity, State or Federal" (emphasis added). Complaint at para. 7. Coast also finds jurisdiction in this Court under 5 U.S.C. § 702, the "Right of Review" provision of the Administrative Procedures Act, and under 28 U.S.C. § 2201 and 2202, the Declaratory Judgment Act, as well as under 28 U.S.C. § 1331 and Sections 209 & 301 of FIRREA. *Id.*

DISCUSSION

A. *Suit Against the United States*

■ As Judge Royce Lamberth pointed out in *Olympic Federal Savings and Loan Association v. Director, Office of Thrift Supervision,* No. 90–0482, slip op. at 9 (D.D.C. Sept. 6, 1990), this Court may exercise jurisdiction over a claim against the United States only if there has been both a clear waiver of sovereign immunity and a grant of subject matter jurisdiction. In *Olympic,* and in a similar suit against the OTS for equitable and declaratory relief, *Northeast Savings, F.A. v. Director, Office of Thrift Supervision,* 770 F.Supp. 19 (D.D.C.1991) (Judge Joyce Hens Green), the plaintiff thrift institutions admitted that their suits, however styled, were actually suits against the federal sovereign under the standards set forth in *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). *Olympic, supra,* at 11; *Northeast, supra,* at 23.

■ In this case, the plaintiffs contend that they are not suing the United States, but rather the OTS and the FDIC, and that

---

**4.** *See, e.g., Olympic, supra,* slip op. at 3–5 (D.D.C. Sept. 6, 1990), and *Northeast, supra,* at 20–21

(D.D.C.1991).

the statutes mentioned above waive sovereign immunity and grant subject matter jurisdiction as to these agencies, particularly when the relief sought, as here, is merely injunctive and declaratory, and not monetary. Opposition at 3–4, 7–23. The defendants counter that plaintiff's suit really challenges an action of the United States under the standard set forth in *Dugan*, which states:

> The general rule is that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," ... or if the effect of the judgment would be "to restrain the Government from acting, or compel it to act."

372 U.S. at 620, 83 S.Ct. at 1006 (citations omitted). Motion to Dismiss at 23. To be sure, the defendants are correct that the relief the plaintiff seeks—an injunction barring application of OTS's stricter accounting regulations to plaintiff—could only operate to "interfere with the public administration" of FIRREA and "restrain the Government from acting, or compel it to act." *Id.* In FIRREA, Congress charged the Director of OTS to promulgate, in response to a nationwide crisis, new regulations prescribing stricter capital standards for all thrift institutions. *See Olympic, supra,* at 4; *Northeast, supra,* at 21. Moreover, as the Court of Appeals for the Fourth Circuit stated in interpreting *Dugan*, "a suit against a federal official for acts performed within his official capacity ... amounts to an action against the sovereign." *Portsmouth Redev. & Housing Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir.1983).[5]

It is also noteworthy that, like the plaintiffs in *Olympic, supra,* plaintiffs here argue that "the defendants seek to drain their own statutory waivers of sovereign immunity of any meaning, without offering any explanation as to Congress' purpose in including the 'sue and be sued' and 'subject to suit' language in FIRREA."[6] Opposition at 13. As the *Olympic* decision made clear, however,

> an action is against an agency, rather than against the United States, when the agency has within its possession and control funds which it can use to pay a judgment. As the Supreme Court has made clear, actions for monetary relief are not necessarily claims for money damages. *Bowen v. Massachusetts*, 487 U.S. 879, 893–96 [108 S.Ct. 2722, 2731–33, 101 L.Ed.2d 749] (1988). Accordingly, suits seeking monetary relief could be brought against the Director of OTS under the "subject to suit provision" if the money used to pay the judgment was in OTS' control. The long-standing interpretation of the limits on the waiver of an agency's sovereign immunity therefore do not rob the OTS "subject to suit" provision of meaning.

*Olympic, supra,* at 12. As in *Olympic*, the fact that the plaintiff here is seeking equitable relief, *i.e.*, an injunction, rather than monetary relief, does not alter the limits on the sovereign immunity waivers of the OTS and FDIC.

The plaintiff relies on the Federal Circuit's decision in *Far West Federal v. Office of Thrift Supervision*, 930 F.2d 883 (Fed.Cir.1991), to support the contention that the Federal Circuit has found its "own lower court—the Claims Court—does not have exclusive jurisdiction over claims such

---

5. In *Portsmouth*, a municipal housing authority sought to enjoin the Department of Housing and Urban Development from withholding federal operating subsidies it claimed were due under its annual contributions contract with HUD. HUD withheld the subsidies because the local authority had refused to execute a congressionally mandated amendment to the contract. The Secretary of HUD filed a motion to dismiss for lack of jurisdiction, alleging that the action was actually a contract claim against the United States that belonged in the Claims Court. The

Court of Appeals ultimately upheld HUD's position, *"both because* this is a *suit against a federal official* and any judgment recovered would expend itself on the public treasury."* 706 F.2d at 474.

6. In *Olympic*, the plaintiffs argued that, under the government's interpretation, *"'every* suit against a federal agency is "in reality" against "the United States" and thus *every* specific waiver of sovereign immunity for a particular agency is written out of the United States Code.'"* *Olympic, supra,* at 11.

as Coast's against the very same defendants as in the instant case." Opposition at 12. Examination of the Federal Circuit's decision in *Far West*, however, shows it to be inapposite to "claims such as Coast's" and fully consistent with the reasoning set forth in *Olympic.*

In *Far West*, the plaintiff thrift sought relief in the district court in Oregon consisting of declaratory and injunctive relief from the FIRREA-based regulations and, in Count IV of its complaint, sought *contract rescission and restitution* from OTS and the FDIC.[7] *See Id.* at 885–87; *Far West Federal v. Dir., Office of Thrift Supervision,* 744 F.Supp. 233 (D.Ore.1990). As noted in *Olympic, supra,* at 13 n. 4 (emphasis added), the district court in *Far West* found as to all of the plaintiff's claims

> that plaintiff's action *was against the sovereign* but that the "subject to suit" provision waived immunity. The court did not, however, discuss any of the cases relied on by this court [cited at *Olympic, supra,* slip op. at 10–11] or explicitly decide that the agency's waiver was binding on the United States. It is therefore not clear that the issue was adequately presented to the *Far West* court.

**7.** This relief was sought for failure of consideration under a thrift merger agreement in which private investors relied on defendants' promises of favorable capital treatment. *Id.*

**8.** Specifically, the Federal Circuit held regarding the FDIC that
> Far West's *Count IV* is of a pattern with those claims where a statutory "sue and be sued" clause was held to waive immunity and grant subject matter jurisdiction.
> We conclude that Far West's claim for *rescission* and *restitution* may be brought in the district court under the "sue and be sued" clause.

*Far West,* 930 F.2d at 889 (emphasis added). The Court further held, as to the "subject to suit" clause affecting the OTS, that, for judicial economy's sake,
> One court, hearing all aspects including *Count IV,* is in a better position to reach the correct result on the entire matter.... We conclude that immunity from suit in the district court, *as to Count IV,* has been waived with respect to OTS.

For this reason, the court in *Olympic* expressly declined to follow the District of Oregon's holding that FIRREA's waivers waived the sovereign immunity of the United States. *Id.*

The Federal Circuit became involved in the case when the District of Oregon denied the government's motion in *Far West* to sever and transfer to the Claims Court the rescission and restitution claims embodied in Far West's Court IV; the Federal Circuit heard the government's appeal of this denial, in accordance with 28 U.S.C. 1292(d)(4)(A). Eight months after the *Olympic* decision, the Federal Circuit held that FIRREA's "sue and be sued" and "subject to suit" clauses waived the immunity of the FDIC and OTS and granted subject matter jurisdiction in the district court to hear the *rescission* and *restitution* claims of the plaintiff.[8] Thus, the issue before the Federal Circuit in *Far West,* and the only one to which it spoke, was whether there was a waiver of immunity and jurisdiction in the district court over plaintiff's claims for the equitable remedy in contract of *rescission,* in conjunction with *restitution of funds identified to the FDIC.*

The Federal Circuit's holding in this regard is in lockstep with the conclusion in *Olympic* that

*Id.* at 891–92 (emphasis added). In so holding, the Federal Circuit observed that
> In general, in an action against a governmental corporation only those funds "which are in its possession, severed from Treasury funds and Treasury control, are subject to execution." [*Federal Housing Admin., Region No. 4 v.] Burr,* 309 U.S. [242] at 250 [60 S.Ct. 488 at 493, 84 L.Ed. 724].... Recovery under "sue and be sued" and "subject to suit" clauses is thus limited to funds within the possession and control of the agency ... When such funds have not been shown to exist, some courts have held that the jurisdictional basis for suit in the district court has not been met.... Other courts ... have held that when sovereign immunity is waived by a "sue and be sued" clause, the court need not analyze the funds within the Secretary's control that are used to satisfy the judgment. We need not choose between these potentially divergent paths, for in this case Far West has identified funds in the control of the FDIC ...

*Id.* at 890 (emphasis added).

an action is against an agency, rather than against the United States, when the agency has within its possession and control funds which it can use to pay a judgment.

*Olympic, supra,* at 12. The Federal Circuit decision did not consider the injunctive and declaratory relief sought in the district court in Oregon, whose ruling on waiver of sovereign immunity and subject matter jurisdiction was specifically rejected by *Olympic.*

The sole remedy sought in the case at hand, as in *Olympic* and *Northeast,* and unlike that considered by the Federal Circuit in *Far West,* is an injunction prohibiting OTS from applying its current capital regulations to the plaintiff thrifts. *See* Opposition at 16. This Court agrees with the defendants that the injunctive relief plaintiff seeks "is nothing more than a request for specific performance" of plaintiff's contract with the defendants. Motion to Dismiss at 21. *See Olympic, supra,* at 16–17 ("Plaintiff cannot avoid the Tucker Act merely by alleging that damages will be inadequate or by requesting specific relief"); *Northeast, supra,* at 23–24 ("[A] claimant may not avoid the exclusive jurisdiction of the Claims Court simply by framing a complaint to seek nonmonetary relief").

The plaintiff is quite clear that it is seeking to "vindicate its contractual and constitutional rights," and that it "does not seek *any* money, whether in the possession and control of defendant agencies or of the United States Treasury." Opposition at 6, 16. Plaintiff argues that "if FIRREA waived immunity for recovery from *monetary* relief in *Far West,* surely it waives *nonmonetary* relief for Coast against the same defendants." *Id.* at 12. As demonstrated above, however, this conclusion does not follow from the Federal Circuit's *Far West* decision. It is precisely because the plaintiff seeks relief that is non-monetary and tantamount to specific perform-

ance against the defendant agencies that this Court finds that plaintiff's suit is in effect "against the sovereign" within the meaning of *Dugan v. Rank.*

## B. *The District Court's Jurisdiction*

Having found that plaintiff is effectively suing the United States, this Court is confronted squarely with defendants' argument that plaintiff's claims fall within the ambit of the Tucker Act, that no other federal statute manifests a waiver of sovereign immunity and vests subject matter jurisdiction in this Court over these claims, and that the Claims Court therefore has exclusive jurisdiction over the instant suit. Motion to Dismiss at 18–19.

■ The decisions in *Olympic* and *Northeast* are wholly dispositive on these points. The *Olympic* court's analysis of 12 U.S.C. 1464 and 1819, the "subject to suit" and "sue and be sued" provisions affecting the defendants, has already been discussed. This Court agrees that these provisions do not waive the sovereign immunity of the United States and therefore do not confer subject matter jurisdiction on the district court.[9] *See Olympic, supra,* at 10–13. Plaintiff acknowledges that *Olympic* holds squarely against it on the matter of these statutory waivers; however, it points to cases decided by other district courts before and since *Olympic,* as well as to the Federal Circuit's decision in *Far West,* that plaintiff contends "have either expressly or implicitly found jurisdiction." Opposition at 11 and n. 12. As to the seven pre-*Olympic* district court holdings relied on, Judge Lamberth considered each and expressly "decline[d] to follow their lead," either because they did not discuss or did not adequately consider the limits to FIRREA's immunity waivers when the suit is actually against the United States. *Olympic, supra,* at 12–13 & n. 4.

■ This Court also finds no jurisdiction over plaintiff's action conferred by the Ad-

**9.** This Court notes, as did the Court in *Olympic, supra,* at 10 n. 3, that 28 U.S.C. 1331 does not waive sovereign immunity and therefore cannot alone support subject matter jurisdiction. Likewise, 28 U.S.C. 2201–2202 provide no independent basis for jurisdiction. Finally, FIRREA sections 209 and 301 merely reaffirm FDIC's "sue and be sued" waiver of immunity and that the Director of OTS is "subject to suit."

ministrative Procedures Act, 5 U.S.C. 702. In brief, the Supreme Court's decision in *Massachusetts v. Bowen*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), does not apply to breach of contract claims. *See Olympic, supra*, at 15–16. Accordingly, in a contract action, the court must consider, as per Section 702, whether "any other statute that grants consent to suit expressly or impliedly forbids the relief sought." The pertinent statute here is the Tucker Act, which courts have consistently interpreted as barring relief other than for money damages on contract claims and therefore precluding APA review of such claims. *Id.* at 16–17; *Northeast, supra*, at 24 (both citing *Sharp v. Weinberger*, 798 F.2d 1521, 1523–24 (D.C.Cir.1986)). The Court of Appeals decision in *Esch v. Yeutter*, 876 F.2d 976 (D.C.Cir.1989), is inapposite here because plaintiff's claims are rooted in its alleged contract with defendant. *See Olympic, supra*, at 18,

The plaintiff's "taking" claim alleges that the provisions of FIRREA and the OTS regulations "constitute a repudiation and abrogation of Coast's contract rights . . . and effect a taking of Coast's property without just compensation." Complaint at para. 79. As in *Olympic* and *Northeast*, it is apparent that the property allegedly taken is the putative contract right. *Olympic, supra*, at 20–21; *Northeast, supra*, at 24. Plaintiff's taking claim is thus in essence a contracts claim actionable in the Claims Court and over which this Court lacks subject matter jurisdiction. Likewise, plaintiff's due process claim is in essence a contracts claim. Complaint at para. 81. This claim also belongs exclusively in the Claims Court. *Olympic, supra*, at 18–20; *Northeast, supra*, at 23–24 (both citing *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967–68 (D.C.Cir.1982)).

Plaintiff further alleges that defendants should be estopped, based on their Assistance Agreement with Coast, from applying FIRREA and the OTS capital regulations to the plaintiff. Complaint at para. 85. This Court again concurs with the *Olympic's* holding that the Administrative Procedures Act does not waive sovereign immu-

nity as to such a promissory estoppel claim. *See Olympic, supra*, at 22–24.

*Conclusion*

For the foregoing reasons, plaintiff's contract (COUNT III), taking (COUNT I), due process (COUNT II), and estoppel (COUNT IV) claims are dismissed for lack of subject matter jurisdiction.

SO ORDERED.