# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 25-5119

September Term, 2025

FILED ON: MAY 26, 2026

JAMES F. MURPHY,

APPELLANT

v.

DANIEL DRISCOLL, THE HONORABLE; IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE ARMY

APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:23-cv-03481)

Before: SRINIVASAN, *Chief Judge*, and HENDERSON and RAO, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is hereby

**ORDERED** and **ADJUDGED** that the judgment of the district court be **AFFIRMED**.

## I

Sergeant First Class James Murphy retired from the United States Army Reserve in 2010 after more than thirty years of honorable service. Shortly thereafter, he filed an application with the Army Board for Correction of Military Records (Board) seeking to change his retirement from a reserve retirement due to reaching maximum age to an active-duty retirement based on medical disability.[1] Murphy had suffered several on-the-job injuries during temporary active-duty assignments and believed they rendered him unable to meet medical retention standards. Thus,

---

[1] "The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The Board conducts administrative review on behalf of the Secretary of the Army and its decisions constitute final action by the Secretary. 32 C.F.R. § 581.3(g)(2).

he argued, the Army should have referred him for a medical evaluation at the time of the injuries and ultimately separated him for unfitness.

The Board denied Murphy's request in October 2011, finding that he had continued to perform his duties adequately despite any injury. *See, e.g.*, J.A. 134 ("[H]e was rated successful in all duties and found fully capable by his rater."). Murphy requested reconsideration. *See* 32 C.F.R. § 581.3(g)(4). The Board returned the request without action because Murphy had not included any new evidence or argument. *See id.* § 581.3(e)(1)(iv).

In December 2014, Murphy submitted a second application to the Board, J.A. 159, requesting a change in the narrative reason for his separation (from "completion of required active service" to "disability"), J.A. 151. Applications typically must be filed "within 3 years after an alleged error or injustice is discovered or reasonably should have been discovered." 32 C.F.R. § 581.3(d)(2). Murphy's application—submitted over four years after his retirement—was untimely but the Board determined "in the interest of justice" to "conduct a substantive review." J.A. 152; *see* 32 C.F.R. § 581.3(d)(2) ("The [Board] may excuse untimely filing in the interest of justice."). Ultimately, the Board denied the request in September 2015 because Murphy "was not released from active duty due to unfitness" and "was never found unfit for duty." J.A. 157.

In December 2021, Murphy submitted a third application to the Board, requesting different, although closely related, relief. The Board treated the application as a request for reconsideration of its 2015 decision. Applicants typically must file requests for reconsideration within one year of the Board's initial decision. 32 C.F.R. § 581.3(g)(4). Murphy's request was not filed until six years after the Board's 2015 decision but the Board considered it without noting the delay. In reviewing the request, the Board acquired for the first time an advisory opinion from an Army Review Boards Agency Medical Advisor. The Advisor found Murphy's medical records "insufficient to support that [his] conditions would have been found unfitting . . . and the record showed that [Murphy] was able to perform his duties despite the profile through his final deployment." J.A. 31. The Board "concurred" with the Advisor, J.A. 22, and denied Murphy relief on March 29, 2023, J.A. 6.[2]

In November 2023, Murphy sued the Secretary of the Army in district court, alleging the Board's 2023 decision was arbitrary and capricious under the Administrative Procedure Act (APA). The parties cross-moved for summary judgment and the district court ruled in favor of the Secretary. *Murphy v. Driscoll*, No. 23-cv-3481, 2025 WL 958242, at *5 (D.D.C. Mar. 31, 2025). It reasoned that the 2023 denial of reconsideration was not a reviewable final agency action. And, to the extent Murphy also challenged the Board's 2011 and 2015 decisions, his action failed to comply with the statute of limitations set by 28 U.S.C. § 2401(a) ("[E]very civil

---

[2] The Board "reconsidered" Murphy's case but "denied [his] request for relief." J.A. 6; *see also* Oral Arg. at 11:53 ("[I]n this case the Board granted reconsideration."). It now calls the resulting decision a "denial of reconsideration." Appellee's Br. 27. And Murphy conceded the decision is properly framed as a "denial of reconsideration." Oral Arg. at 15:34–15:38. Although somewhat a misnomer, our Court has adopted this framing in analogous cases. *E.g.*, *Smalls v. Del Toro*, No. 21-5065, 2021 WL 4768384, at *1 (D.C. Cir. Sep. 30, 2021) (per curiam). We continue to do so here.

action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.").

Murphy appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and review the grant of summary judgment de novo. *Thompson v. District of Columbia*, 832 F.3d 339, 344 (D.C. Cir. 2016).

## II

Murphy argues his suit is timely because the Board's 2023 denial of his reconsideration request "reopened" its earlier decisions, thereby constituting new agency action. But the 2023 decision did not amount to a reopening under our precedent. Thus, Murphy was required to bring suit within six years of either the 2011 or the 2015 decision, which he failed to do. 28 U.S.C. § 2401(a); *see Havens v. Mabus*, 759 F.3d 91, 97 n.11 (D.C. Cir. 2014) (noting APA claims accrue on the date of Board's decision). Accordingly, we affirm.

## A

Typically, "an agency's decision to deny reconsideration of an earlier order is unreviewable." *U.S. Postal Serv. v. Postal Regul. Comm'n*, 841 F.3d 509, 512 (D.C. Cir. 2016). The so-called "reopening doctrine" is an exception to this general rule. *Nat. Res. Def. Council v. EPA*, 571 F.3d 1245, 1265 (D.C. Cir. 2009) (citation modified). "[I]f the agency has opened the issue up anew, even though not explicitly, its renewed adherence is substantively reviewable." *Pub. Emps. for Env't Resp. v. EPA* (*PEER*), 77 F.4th 899, 911 (D.C. Cir. 2023) (quoting *Pub. Citizen v. Nuclear Regul. Comm'n*, 901 F.2d 147, 150 (D.C. Cir. 1990)). The burden to demonstrate that an agency's intent to reopen is clear from the record is on the party challenging the action. *Id.*

The Court has found reopening in two circumstances. First, the denial of a request for reconsideration which alleges "new evidence" or "changed circumstances" constitutes a reopening. *Sendra Corp. v. Magaw*, 111 F.3d 162, 166 (D.C. Cir. 1997) (quoting *Interstate Com. Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 278 (1987)); *see also Smalls v. Del Toro*, No. 21-5065, 2021 WL 4768384, at *1 (D.C. Cir. Sep. 30, 2021) (per curiam) (applying this standard to military corrections board decision). New evidence includes only "facts which, through no fault of the petitioner, the original proceeding did not contain." *Sendra Corp.*, 111 F.3d at 166 (citation modified).

Second, reopening can occur if the agency, "despite denying reconsideration, 'clearly states or indicates that it has reopened the matter.'" *Palacios v. Spencer*, 906 F.3d 124, 127–28 (D.C. Cir. 2018) (quoting *Sendra Corp.*, 111 F.3d at 167). Ambiguity will not suffice. *Fort Sumter Tours, Inc. v. Babbitt*, 202 F.3d 349, 356 (D.C. Cir. 2000). Absent the requisite clear evidence, "an agency order that denies reconsideration and does not alter the original decision is 'conclusive.'" *Am. Ass'n of Paging Carriers v. FCC*, 442 F.3d 751, 756 (D.C. Cir. 2006) (quoting *Sendra Corp.*, 111 F.3d at 167). In such a case, courts should "not undertake an inquiry into whether reconsideration 'in fact' occurred." *Bhd. of Locomotive Eng'rs*, 482 U.S. at 280.

3

**B**

The Board's 2023 denial of Murphy's reconsideration request did not constitute a reopening. Murphy asserts in passing that his "third application did contain new evidence." Appellant's Br. 8. Although the filing included numerous records from Murphy's time in service, *see* J.A. 7–8, there is no indication Murphy did not have access to these materials at the time of his earlier filings. Because the information "was available before the [Board] first acted" and "within [Murphy's] control," it is not the kind of new evidence sufficient to reopen. *Sendra Corp.*, 111 F.3d at 166.

Neither did the Board make a "crystal clear" statement that it reopened the matter. *PEER*, 77 F.4th at 914. To the contrary, the Board said it was "denying" Murphy's request for relief, J.A. 6, because there was an "insufficient . . . basis to amend" its earlier decisions, J.A. 23. This contrasts with the 2015 decision, in which the Board said it was "conduct[ing] a substantive review of this case" and denied Murphy's application on the merits. J.A. 150, 152. Also, the 2023 decision explicitly referenced the Board's earlier decisions, summarizing them and highlighting that much of the evidence had been "previously reviewed." J.A. 11. The 2015 decision, however, made no mention of the 2011 decision. If, as here, an agency denies reconsideration without altering its earlier decision, there is no clear evidence of reopening. *Sendra Corp.*, 111 F.3d at 167.

Murphy argues the "entire context" of the Board's decision indicates it "undertook a serious, substantive reconsideration" sufficient to demonstrate reopening. Appellant's Br. 22 (citation modified). The Board's analysis, however, was consistent with a straightforward denial of reconsideration. "Reopening . . . does not necessarily occur by dint of the agency's consideration of the merits." *Am. Ass'n of Paging Carriers*, 442 F.3d at 756; *accord Bhd. of Locomotive Eng'rs*, 482 U.S. at 281 ("[I]t is the [agency's] formal action, rather than its discussion, that is dispositive."). "That the agency discusses the merits at length when it denies a request for reconsideration does not necessarily mean the agency has reopened the proceedings." *Sendra Corp.*, 111 F.3d at 167 (citing *Bhd. of Locomotive Eng'rs*, 482 U.S. at 280–81). Despite asking for new relief, Murphy's third application raised the same core issue the Board previously considered—Murphy's fitness for duty—and the Board's analysis closely tracked its two earlier decisions. Thus, it discussed the merits of Murphy's case only to explain why there was no basis to reopen.

Moreover, the Board's inclusion of the new medical advisory opinion does not alter our disposition. Agencies are permitted to further investigate the evidence in deciding whether to reopen a matter. *See Sendra Corp.*, 111 F.3d at 164, 167 (finding no reopening after agency conducted a reinspection). And they may seek outside help to do so. *See PEER*, 77 F.4th at 916 (finding no reopening where agency hired a consultant to assist analysis). The Board's discussion of the medical advisory opinion explained why it presented no reason to reopen Murphy's case: The opinion reached the same conclusions as the Board, using the same rationale and on the same evidence.

Finally, Murphy contends the mere fact that the Board considered his 2021 request indicates a reopening because his filing was untimely.   But an agency may engage with the merits of a reconsideration request after a time bar has elapsed without necessarily transforming the resultant denial into a reopening.  *See Am. Rd. & Transp. Builders Ass'n v. EPA*, 588 F.3d 1109, 1114 (D.C. Cir. 2009) (rejecting rule that "the agency's thorough answer would put it at risk of 'reopening,' while a taciturn response would put it at risk of being faulted for acting without reasoned decisionmaking").

Overall, Murphy has failed to show that the Board "clearly stated or otherwise demonstrated" in its 2023 denial of his reconsideration request that it reopened his case.  *Sendra Corp.*, 111 F.3d at 167 (citation modified).   That decision is therefore unreviewable.   And, because Murphy's request was filed more than six years after the Board's 2015 decision, the statute of limitations runs from the underlying decision rather than the denial of reconsideration.  *Nihiser v. White*, 211 F. Supp. 2d 125, 131 (D.D.C. 2002); *cf. Simmons v. Rubio*, 170 F.4th 905, 911 (D.C. Cir. 2026) (involving a *timely* reconsideration request).   Murphy did not file suit until 2023 and, thus, his action is untimely.   28 U.S.C. § 2401(a).

\* \* \*

For the foregoing reasons, we affirm the district court's grant of summary judgment to Appellee and denial of summary judgment to Appellant.

This disposition is unpublished.   *See* D.C. Cir. R. 36(d).   We direct the Clerk to withhold this mandate until seven days after the resolution of a timely petition for panel or en banc rehearing.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

FOR THE COURT:
Clifton B. Cislak, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk

5